UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL STINSON,<br>    *Petitioner,*<br>    *v.*<br>UNITED STATES OF AMERICA,<br>    *Respondent.* | Civil No. 3:14-cv-331 (JBA)<br><br>February 6, 2015 |

**RULING ON PETITIONER'S MOTIONS UNDER § 2255**

On March 9, 2010, Petitioner Michael Stinson was convicted of conspiracy to steal firearms from a federally licensed firearm dealer, theft of firearms from a federally licensed firearm dealer, and felon in possession of a firearm. On May 28, 2010, this Court sentenced Mr. Stinson to 200 months in prison.[1] Mr. Stinson appealed his conviction to the Second Circuit, but the judgment was affirmed. (Summary Order [Doc. # 16-7] at 1.) Mr. Stinson now moves [Doc. ## 1, 8] to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody. For the following reasons, his motion is denied.

I.      Discussion

Section 2255 allows prisoners in federal custody to move for their sentences to be vacated, set aside, or corrected. 28 U.S.C. § 2255. Section 2255(a) states as the grounds for which relief can be provided: "[T]he sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Mr. Stinson alleges

---

[1] Mr. Stinson's sentence was based on the fact that he had three prior felony convictions for crimes of violence, making him an Armed Career Criminal under the Sentencing Guidelines.

in his § 2255 petition that: (1) his trial counsel was ineffective, in violation of his Sixth Amendment right to counsel, (2) the prosecutor was guilty of prosecutorial misconduct, (3) his sentence violates *Alleyne v. United States*, 133 S. Ct. 2151, 2163 (2013) and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), and (4) his sentence runs afoul of *Descamps v. United States*, 133 S. Ct. 2276, 2284 (2013).

### A. Ineffective Assistance of Counsel

A petitioner seeking to bring an ineffective counsel claim must satisfy two prongs: (1) "the defendant must show that counsel's representation fell below an objective standard of reasonableness;" and (2) the defendant must demonstrate that "any deficiencies in counsel's performance [were] prejudicial to the defense." *Strickland v. Washington*, 466 U.S. 668, 688–91 (1984). A court assessing such a claim "must be highly deferential" to counsel and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Mr. Stinson's 142-page petition lists numerous instances of his counsel's alleged ineffectiveness, including: (1) counsel's failure to inform him of the Federal Rules of Criminal Procedure (§ 2255 Petition [Doc. # 8] at 7), (2) counsel's failure to ensure Petitioner's presence and testimony at the grand jury proceedings and her failure to raise an objection to Petitioner's absence under Rule 12 (*id.* at 15–16), (3) counsel's failure to challenge the grand jury proceedings on the basis of government cooperator Ameed Stevenson's alleged perjury (*id.* at 20), (4) counsel's failure to raise a defense of selective prosecution (*id.* at 24), (5) counsel's failure to investigate the prosecutor's claim that he was unaware of any *Brady* material (*id.* at 33–37), (6) counsel's failure to object to the submission of evidence (the stolen guns) for which the chain of evidence was tainted (*id.*

2

at 43–45), (7) counsel's failure to adequately cross-examine Agent Riordan regarding his use of physical force to coerce Mr. Stevenson into carrying out the "takedown" plan (*id.* at 49–53), (8) counsel's failure to object to the admissibility of his cell phone records (*id.* at 54–56, 109–116), (9) counsel's failure to object to the leading questions the prosecution posed to Mr. Stevenson (*id.* at 57), (10) counsel's failure to vigorously cross-examine Mr. Stevenson regarding inconsistencies in his testimony (*id.* at 60–68) and discrepancies between his grand jury and trial testimony (*id.* at 75–85), (11) counsel's failure to question Mr. Stevenson about the quid pro quo he received in exchange for assisting police (*id.* at 71–72), (12) counsel's failure to adequately prepare Petitioner to testify (*id.* at 88), and her failure to raise more objections to the prosecution's cross-examination of Petitioner (*id.* at 87–97).

### 1.  Claims that are Procedurally Barred

As the Government argues in its opposition, some of Mr. Stinson's ineffective assistance claims are procedurally barred because Mr. Stinson raised them on appeal. "It is well established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'" *United States v. Pitcher*, 559 F.3d 120, 124 (2d Cir. 2009) (quoting *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001)). However, "[a] claim is not barred from being brought in a § 2255 motion where it rests upon a different legal 'ground' for relief than the one previously raised." *Id.* at 123. Mr. Stinson raised the factual predicates of claims five (regarding *Brady* materials), seven (regarding cross-examination of Agent Riordan), and eight (regarding cell phone records), as numbered above, in his pro se appellate brief, and the Second Circuit rejected them as meritless. (*See* Summary Order at 11 ("We have fully considered all of Michael's . . . claims on

appeal and find each to be without merit."); Pro Se App. Br. [Doc. # 16-6] at 4 ("The government, heretofore, has failed to provide defendant with all 'Brady materials.'"); *id.* at 1 ("The record clearly reflects that the government's agent's confidential-informant ('CI') was physically coerced into his cooperative actions in which [sic] resulted in defendant's arrest."); *id.* at 5 ("The government failed to initially obtain a warrant for the defendants' property prior to its seizure and contemporaneously offering the cellular phones' conversations and contact numbers.")). As such, Mr. Stinson is barred from re-litigating those claims here.

### 2. Unsupported Allegations

Claims one and two reflect a misunderstanding of the scope of Petitioner's rights. The Sixth Amendment guarantees criminal defendants "the assistance of counsel," which the Supreme Court has interpreted to mean "reasonably effective assistance." *Strickland*, 466 U.S. at 687. Reasonably effective assistance "entails certain basic duties . . . [including] a duty of loyalty, a duty to avoid conflicts of interest[,] . . . the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Id.* at 688 (internal citations omitted). Thus, while a criminal defense attorney must consult with her client about what plea to enter, whether to accept a plea agreement, whether to waive a jury trial, whether to testify on his own behalf, and whether to appeal, some decisions, particularly those pertaining to technical, procedural or strategic matters, are left to the attorney's judgment. *See* 1 ABA Standards for Criminal Justice 4.52 (3d ed. 1993). Because defendants do not have a right to be informed of the contents of the Federal Rules of Criminal Procedure, Mr. Stinson's

4

counsel's failure to so inform him does not constitute ineffective assistance of counsel. Nor does a criminal defendant have a "constitutionally protected right to appear before the grand jury considering his case," *United States v. Rodriguez*, 777 F. Supp. 297, 298 (S.D.N.Y. 1991) (citing *United States ex rel. McCann v. Thompson*, 144 F.2d 604 (2d Cir. 1944)), because "[a] grand jury proceeding is an ex parte investigation, not an adversary hearing," *id.* (citing *United States v. Calandra*, 414 U.S. 338, 343–44 (1974)).

Mr. Stinson's third and fourth claims are that his counsel failed to object to the grand jury's indictment on the basis of an error in the grand jury proceeding or selective prosecution. However, Mr. Stinson points to no error in the grand jury proceedings. His unsupported allegations that Mr. Stevenson perjured himself in his grand jury testimony do not suffice. Perjury requires a showing that an individual under oath made a false statement, "as to a material fact . . . which the [individual] did not believe to be true." *United States v. Stone*, 429 F.2d 138, 140 (2d Cir. 1970). The inconsistencies Mr. Stinson points out in Mr. Stevenson's grand jury testimony do not evidence false statements of material fact sufficient to support a perjury allegation. As such, Mr. Stinson's counsel had no duty to object to the indictment on the basis of Mr. Stevenson's alleged perjury.

Likewise, there is no evidence that Mr. Stinson's counsel erred in failing to raise the defense of selective prosecution. Generally, "'so long as [a] prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury . . . rests entirely in his discretion.'" *United States v. Armstrong*, 517 U.S. 456, 464–65 (1996) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). A claim of selective prosecution only arises where there is evidence that the decision to prosecute was based

5

on an "'unjustifiable standard such as race, religion, or other arbitrary classification.'" *Id.* (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). Mr. Stinson has alleged no facts to support an assertion that the he was prosecuted instead of Mr. Stevenson on constitutionally impermissible grounds.

Mr. Stinson's sixth objection is that his counsel failed to object to the submission of guns into evidence for which the chain of evidence had been broken. Even if there were merit to this claim, it is difficult to understand its relevance. Mr. Stinson's defense at trial was not to deny his involvement in the theft of the guns (an implausible argument given the videotape footage of the theft) but rather to claim that he had been entrapped. Since the theft of the guns was not disputed, Mr. Stinson's contention that the chain of evidence was disrupted for the guns is inapposite to his defense.

Mr. Stinson's ninth through eleventh claims are not substantiated by the trial transcript. Mr. Stinson asserts that his counsel was ineffective for failing to object to leading questions posed to Mr. Stevenson, but he points to no specific leading questions to which his attorney should have objected. He also alleges that his counsel failed to vigorously cross-examine Mr. Stevenson regarding inconsistencies in his testimony, discrepancies between his grand jury and trial testimony, and the quid pro quo Mr. Stevenson received in exchange for assisting the police. However, the trial transcript demonstrates that all three defense attorneys used their cross-examinations of Mr. Stevenson to point out holes and inconsistencies in his story and to demonstrate his general lack of credibility. (*See* Trial Tr. Vol. I [Doc. # 16-1] at 370–406, 414–23, 425–32.) The transcript further reveals that Mr. Stevenson was questioned about the cooperation

agreement he had signed and the benefits he expected in exchange for assisting the police in their investigation of the defendants. (*Id.*)

As to Mr. Stinson's allegation that his counsel did not meet with him a sufficient number of times to prepare him for trial, courts in this district have been clear that an ineffective assistance "claim cannot . . . rest on a bare allegation that . . . counsel did not consult with [a petitioner] long enough." *Rosario v. Bennett*, No. 01 CIV. 7142 (RMB) (AJ), 2002 WL 31852827, at *29 (S.D.N.Y. Dec. 20, 2002). "Because *Strickland* admonishes against mechanical standards for ineffectiveness, there is no set rule for the number of times counsel must meet with a defendant." *Id.* (citing *Wojtowicz v. United States*, 550 F.2d 786, 792 (2d Cir. 1977)) ("In evaluating claims of ineffective assistance of counsel it has long been the rule that 'time consumed in oral discussion and legal research is not the crucial test. . . . The proof of the efficacy of such assistance lies in the character of the resultant proceedings. . . .'") (citation omitted); *United States ex rel. Bradley v. McMann*, 423 F.2d 656, 657 (2d Cir. 1970) (rejecting ineffective counsel claim even though attorney "did not interview or consult with [defendant] until the day trial was to begin"); *Byas v. Keane*, 97 Civ. 2789, 1999 WL 608787, at *5 (S.D.N.Y. Aug.12, 1999) (petitioner meeting with counsel twice for five or ten minutes held sufficient)).

Mr. Stinson's claim that his counsel should have objected more during the prosecution's cross-examination of Petitioner also does not suffice to support his ineffective assistance claim. In support of this claim, Mr. Stinson complains that "[t]here were an appalling 53 non-questions stated by Prosecutor Duffy engineered to elicit particular answers to sway the jury . . . although Prosecutor Duffy is required by her oaths and duties a[s] an Officer of the Court to correctly pose questions." (§ 2255 Pet. at 90.)

Under Federal Rule of Evidence 611(c), however, leading questions are generally permissible on cross-examination. Moreover, "the decision of any trial attorney to object to individual questions (e.g. as 'leading') is evidently tactical, and a court may not second-guess the lawyer's on-the-spot decisions." *Flores v. Keane*, 211 F. Supp. 2d 426, 441 (S.D.N.Y. 2001) (internal quotation marks omitted) (citing *Boyd v. Hawk*, 965 F. Supp. 443, 452 (S.D.N.Y. 1997) ("Counsel's . . . alleged failure to make objections . . . may be attributed to counsel's trial tactics.")). Finally, and importantly, "there is no reasonable probability that the outcome of the case would have been different had counsel objected." *Id.*

### B. Prosecutorial Misconduct

Mr. Stinson next argues that Prosecutor Duffy is guilty of prosecutorial misconduct for withholding *Brady* and *Jencks* material from him. This claim, like several of Mr. Stinson's ineffective assistance claims, is procedurally barred because it was argued and rejected on appeal. (*See* Pro Se App. Br. at 4.)

### C. *Alleyne* and *Apprendi*

Next, Mr. Stinson alleges that his sentence runs afoul of the Supreme Court's decisions in *Alleyne* and *Apprendi*, in which the Court held that facts which increase mandatory minimum or maximum sentences must be found by a jury, not a judge. *See Alleyne*, 133 S. Ct. at 2163; *Apprendi*, 530 U.S. at 490. Mr. Stinson argues that the facts which increased his sentence, that the charged offense involved semiautomatic firearms capable of accepting large capacity magazines and that he had previously been convicted of two felony crimes of violence, should have been charged in the indictment and found by a jury. (§ 2255 Pet. at 124.) However, as the Government notes in its opposition, Mr.

Stinson's sentence was not in fact enhanced on the basis of these facts. (Opp'n [Doc. # 16] at 18.) Rather, Mr. Stinson was sentenced under U.S.S.G. § 4B1.4 as an armed career criminal, and therefore the facts that increased his sentence were only the facts of prior felony convictions which the Supreme Court specifically excluded from its holding in *Alleyne*. *See* 133 S. Ct. at 2160 n.1 ("In *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), we recognized a narrow exception to this general rule for the fact of a prior conviction. Because the parties do not contest that decision's vitality, we do not revisit it for purposes of our decision today."); *see also United States v. Wiggan*, 530 F. App'x 51, 56 n.1 (2d Cir. 2013) (unpublished disposition) ("Under *Almendarez–Torres*, the fact of a prior conviction may be found by a judge. . . . [T]he Supreme Court's decision in Alleyne, did not effectively overrule *Almendarez–Torres*." (internal citations, quotation marks, and alterations omitted)). Moreover, the ruling in *Alleyne* post-dates Mr. Stinson's conviction "and was not made retroactively applicable to cases on collateral review." *United States v. Brunstorff*, No. 3:12CR04 (EBB), 2014 WL 2002735, at *5 (D. Conn. May 15, 2014). Accordingly, Mr. Stinson is not entitled to relief under *Alleyne* or *Apprendi*.

### D. Descamps

Mr. Stinson's final argument appears to be that under *Descamps*, the Court was required to use a modified categorical approach to determine if his prior convictions were violent felonies that would trigger armed career offender enhancement. (§ 2255 Pet. at 134–36.) This argument is however based on a misreading of *Descamps*. "*Descamps* . . . definitively held that the modified categorical approach has no role to play in determining whether a prior offense was a violent felony under the [Armed Career

9

Criminal Act] where the statute of conviction is not divisible, but has a single, indivisible set of elements." *Brunstorff*, 2014 WL 2002735, at *5. Because Mr. Stinson's prior felony convictions qualified under the categorical approach, *Descamps* is inapposite to his sentencing. Additionally, like *Alleyne*, *Descamps* was decided after Mr. Stinson's conviction became final "and has not been made retroactively applicable on collateral review." *Id*.

II.   **Conclusion**

For the foregoing reasons, Michael Stinson's Petition [Doc. ## 1, 8] to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody is DENIED. In addition, his Motion [Doc. # 15] for Immediate Relief for Failure to Respond is DENIED as moot. The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 6th day of February, 2015.